UNITED STATES COURT OF APPEALS
**Filed 11/7/96**
TENTH CIRCUIT

| | |
|---|---|
| GEORGE EARL McCLINE,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>OREGON STATE PENITENTIARY SUPERINTENDENT, also known as Manfred Maass, in his official capacity; OREGON STATE PENITENTIARY CHIEF MEDICAL OFFICER, also known as John Vargo, in his official capacity; WYOMING DEPARTMENT OF CORRECTIONS STATE PENITENTIARY WARDEN, also known as Duane Shillinger, in his official capacity,<br><br>Defendants-Appellees. | No. 96-8031<br>(D.C. No. 93-CV-254)<br>(D. Wyo.) |

## ORDER AND JUDGMENT[*]

Before TACHA, BALDOCK, and BRISCOE, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. Therefore, the case is ordered

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

submitted without oral argument.

Plaintiff George Earl McCline, an inmate serving a life sentence in the Oregon state correctional system, challenges the district court's dismissal of his pro se 42 U.S.C. § 1983 civil rights action against Oregon and Wyoming state prison officials. Plaintiff contends the district court erred in failing to provide him a jury trial, and in failing to consider his diversity claim and his status as a third-party beneficiary to the contract between two states' prison officials to provide prisoners necessary medical service when housed outside their home state. We vacate the district court's order and remand for further consideration by the district court.

## I.

On April 6, 1988, plaintiff was transferred from the Oregon State Penitentiary (OSP) to the Wyoming State Penitentiary (WSP), pursuant to the Interstate Corrections Compact (ICC). Under the ICC, "[t]he cost of any special [medical] services, medication, equipment, surgical, or nursing care shall be chargeable to the sending state." Vol. I, doc. 41. Further, "the receiving state shall contact the sending state for advance authority in writing before incurring medical . . . expense for which the sending state is responsible." Id. The only exception to this "preapproval" process occurs if an inmate needs emergency medical services.

In June 1992, plaintiff allegedly sustained injuries to his left shoulder and right elbow while performing his job duties at WSP. He sought treatment in July 1992 and a WSP physician, Dr. John Whipp, initially treated the injuries with oral anti-inflammatory medication and cortisone injections. Several months later, after plaintiff continued to complain of pain in his shoulder and elbow, Dr. Whipp proposed x-rays and WSP

officials contacted the chief medical officer at OSP, Dr. John Vargo, for approval. Dr. Vargo refused to approve the x-rays on the grounds that he had received no medical verification of the need for x-rays.

Plaintiff sought treatment from a WSP physician, Dr. Archie Kirsch, for severe migraine headaches in the summer of 1993. Dr. Kirsch prescribed Elavil and Sinequan, but plaintiff eventually quit taking them because both were psychotropic drugs. Plaintiff continued to complain of headaches and Dr. Kirsch proposed a CAT scan of plaintiff's head. Dr. Kirsch wrote to Dr. Vargo requesting permission to perform the scan. Dr. Vargo requested more information regarding plaintiff's headaches and WSP sent Dr. Vargo a copy of plaintiff's medical records. Dr. Vargo called Dr. Kirsch and discussed the need for the scan. On November 1, 1993, Dr. Vargo wrote to plaintiff explaining there were in excess of 300 possible causes for headaches and that the request for the CAT scan would be considered by the Oregon medical authorities. In Dr. Vargo's view, it was unusual to perform a CAT scan for headaches and he opined that any findings from the scan would be minimal. On December 30, 1993, Dr. Vargo wrote to the warden at WSP indicating plaintiff was receiving appropriate medical care and that there were no neurological findings or other difficulties that warranted a CAT scan.

Plaintiff filed his complaint in this case on August 31, 1993, asserting jurisdiction under 28 U.S.C. § 1343(3), 42 U.S.C. § 1983, and 42 U.S.C. § 1988, and alleging defendants violated his Eighth Amendment rights by refusing necessary medical treatment for his headaches and his shoulder and elbow injuries. Plaintiff subsequently filed a timely demand for jury trial under Rule 38.

Defendant Duane Shillinger filed a motion for summary judgment on March 17,

1994, and defendants Manfred Maass and Dr. Vargo subsequently filed a joint motion for summary judgment incorporating by reference Shillinger's arguments. On October 21, 1994, the magistrate judge issued a written report recommending the motions for summary judgment be denied, and the district court adopted the magistrate's report on July 5, 1995, denying defendants' motions for summary judgment.

The magistrate issued a notice of hearing on August 10, 1995, stating the court would "hold an evidentiary hearing to make a determination based on the merits of plaintiff's claim[s]." Vol. II, doc. 61 at 1. The order further provided that plaintiff and any other witnesses who were inmates or employees of WSP or OSP would appear by telephone. Plaintiff did not file any written objections to the scheduled evidentiary hearing.

The evidentiary hearing was conducted on November 16, 1995.[1] On February 14, 1996, the magistrate issued written findings of fact and conclusions of law, concluding "[t]he evidence presented to the Court is void as to any negligence on the part of the defendants concerning Plaintiff's medical needs, let alone any intentional misconduct." Id. at 12. The magistrate recommended the complaint be dismissed with prejudice. The report indicated the parties had the right to file objections, specifically stating "[i]n order to preserve appellate review of the proposed Report and Recommendation, said objections must be submitted within ten (10) days after receipt of the Report and Recommendation." Vol. III, doc. 96 at 13.

Plaintiff filed written objections on March 12, 1996. The certificate of service was

---

[1] The record on appeal does not contain a copy of the transcript of the evidentiary hearing.

dated March 6, 1996. Plaintiff asserted he had not waived his right to a jury trial and that the magistrate had exceeded his authority by treating the evidentiary hearing as if it were a trial on the merits of plaintiff's claims. Plaintiff further asserted the evidentiary hearing was flawed because (1) it was impossible for the magistrate to judge the credibility of testimony via telephone; (2) plaintiff was not afforded the right to an attorney or assistance by another inmate; and (3) plaintiff was forced to cross-examine one of the physician witnesses via telephone while that witness was performing surgery.

Defendant Shillinger filed a motion to strike plaintiff's objections on March 11, 1996 (one day prior to the clerk's office receiving plaintiff's written objections). Shillinger argued plaintiff's objections were untimely because they were dated March 6, 1996, which was twenty-one days after entry of the magistrate's order. Defendants Maass and Vargo filed a joint motion to strike plaintiff's objections on March 19, 1996, incorporating by reference Shillinger's arguments.

The district court adopted the magistrate's findings of fact and conclusions of law on March 21, 1996, granting Shillinger's motion to strike and dismissing plaintiff's complaint with prejudice. Although the court noted plaintiff had filed objections to the magistrate's findings and conclusions, the court concluded it could not consider the objections because they were untimely.

## II.

Under the Magistrate's Act, a district court may designate a magistrate judge to "conduct hearings, including evidentiary hearings, and to submit to [the district court] proposed findings of fact and recommendations for the disposition" of "prisoner petitions challenging conditions of confinement." 28 U.S.C. § 636(b)(1). If the district court

adopts this procedure, after the magistrate has completed his or her duties, the district court is required to "make a de novo determination of those portions of the . . . [magistrate's] proposed findings or recommendations to which objection is made." Id.

In this case, the district court invoked the Magistrate's Act and directed the magistrate to conduct "such proceedings as he may deem appropriate." Vol. II, doc. 50. After recommending that defendants' motions for summary judgment be denied, the magistrate complied with the directives of the district court and § 636(b)(1) by conducting a telephonic evidentiary hearing, essentially a modified bench trial, on the merits of plaintiff's claims, and submitting proposed findings of fact and a recommendation for dismissal of plaintiff's claims.

Although plaintiff filed written objections, the district court concluded the objections were untimely. The court concluded that, although the certificate of service attached to plaintiff's objections was dated March 6, 1996, plaintiff had only until March 5, 1996, to "serve and file [his] written objections." Vol. III, doc. 100 at 2 n.1. The court did not specifically describe how it arrived at the March 5, 1996, due date for plaintiff's objections, but it apparently concluded the ten-day period began to run on February 15, 1996, the day after the magistrate issued his findings and recommendation. Significantly, this is not consistent with the magistrate's February 14, 1996, order, which stated the parties were required to "submit" their written objections "within ten (10) days after receipt of the Report and Recommendation." Vol. III, doc. 96 at 13 (emphasis added). Plaintiff was not afforded the opportunity to explain when he actually received the magistrate's order. We therefore remand this matter so that the district court can calculate the proper due date for plaintiff's objections. If plaintiff mailed his objections from

prison on or before the calculated due date, the district court must give consideration to those objections. See Treff v. Galetka, 74 F. 3d 191, 194 (10th Cir. 1996) (holding prisoner's objections to magistrate report should be considered if mailed from prison in timely fashion); Dunn v. White, 880 F.2d 1188, 1190 (10th Cir. 1989) (same), cert. denied 493 U.S. 1059 (1990).

Assuming, for purposes of argument, that plaintiff's objections were timely, we direct the district court to give special attention to plaintiff's assertion that he did not waive his right to a jury trial. As the record indicates, plaintiff filed a timely written demand for jury trial in December 1993. Although the record suggests plaintiff chose to participate in the November 16, 1995, evidentiary hearing, the record is not clear as to whether plaintiff was aware the hearing was to be conducted in lieu of a jury trial or whether plaintiff asserted his right to a jury trial at the time of the evidentiary hearing. See generally Dell'Orfano v. Romano, 962 F.2d 199, 202 (2d Cir. 1992) (holding pro se plaintiff's participation in non-jury trial, without more, insufficient to waive right to jury trial); White v. McGinnis, 903 F.2d 699, 703 (9th Cir. 1990) (prisoner waived right to jury trial by participating, without objection, in bench trial), cert. denied 498 U.S. 903 (1990).

The district court's order striking plaintiff's objections and dismissing his complaint is VACATED, and this matter is REMANDED for further proceedings consistent with this order and judgment.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

-7-